Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is No. 23-1709, State of Maine v. 3M Company. At this time, would counsel for the appellant come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Paul Clement for the appellant, 3M. And I'm going to endeavor to save three minutes for rebuttal, if that would work. Thank you. You may. Thank you. Your Honors, if Maine had simply sued 3M for PFAS remediation in a single lawsuit, the appropriateness of a federal forum for that suit would be obvious. A federal court would determine not only the availability of the federal defense, but whether PFAS associated with the federal activity could be separated from PFAS from private activity, and if so, what percentage of PFAS is shielded by the federal defense. Maine believes that by filing two lawsuits and disclaiming any AFFF liability in one of them, it can defeat federal jurisdiction over the suit with a disclaimer. Indeed, there's no other plausible explanation for why Maine filed two suits instead of one. But that gambit requires two courts to answer the same basic questions about whether PFAS from federal and private activities can be disentangled, and if so, what percentage to allocate to the federal activities. Well, Maine says they're filing two lawsuits because they want to, with regard to the Maine case, focus on harm non-federally related that is done to the state of Maine. So I understand that, Judge Thompson, but the reason they're doing that essentially is, I mean, they could do that in one suit, and if they did it in one suit, it would go to federal court because of the colorable federal defense for the AFFF produced for the military. They could, but they're saying it's our option to file in state court because we don't have a federal claim. And with respect, I would say that that's not their option, because there still is essentially a federal claim or a federal defense in the case, and the issue is going to be what is the relationship between the federal PFAS and the non-federal PFAS. And, I mean, if this were just brought in federal court, it would be pretty straightforward. We'd be debating that issue in the context of what's the scope of the federal defense. Because of the disclaimer here, we would be essentially debating the same issue, but it would be what's the scope of the disclaimer. Is this something that Maine's disclaimed, or is it not? And that, with respect, I think, is exactly the kind of circular disclaimer that this court in Express Scripts recognized is just sort of clever pleading to try to defeat a federal defense. Can I ask you about that and, well, about Express Scripts specifically? In that case, I think we said the ad issue disclaimer there would have permitted Puerto Rico to, quote, recover based on Caremark's official acts, because Caremark jointly negotiated private and government contracts. To me, that is a very different case than 3M's actions here. How do you see that? So, ultimately, I don't think it's a different case. I mean, obviously, it is a different case and different facts. But I think, to me, there's a couple of things that are critical about Express Scripts. One is this court emphatically says that you have to credit the theory of removal in the removal petition. There it was that it's all indivisible. I think there was actually probably some dispute about that. But there it was it was all indivisible. Here it's, as we allege in our removal petition, that the PFAS and the federal PFAS, the phrase we used at one point is inseparably contributed to the alleged non-AFFF contamination. And if we're right about that, then it really ends up being the same issue, which is there is a need to determine in the case how much of this is federally associated, how much of it is non-federally associated. Our position is you really can't do that. And so you're going to have a debate about it. And presumably we're going to have that debate in the federal litigation, the AFFF case that's been removed without objection. And you're going to be having the same issue, and it is essentially an issue that belongs in federal court. Because at bottom, it's an issue about what's the scope of the federal defense. And just to, you know, obviously all of this is a little bit of an accident of timing, but because the Express Script case came down after my friends crafted their complaint, but their own complaint seven different times with each of the counts in the complaint that's directed, except for the counts that are specific to DuPont, which aren't at issue here. In each one of those complaints, they say the injury is indivisible. Like that's the phrase they use. And the other thing about Express Script I find very helpful is this court said that at one point in the opinion, the way to think about this is first ask the question, would this complaint be removable without the disclaimer? And then ask, does the disclaimer suffice? Now, I think that first question here answers itself. Without the disclaimer, this case is in federal court. And again, they didn't even contest the removability of the 8FFF twin suit, so I think that's pretty straightforward. So then the question is, does this disclaimer get it done? And with respect, I don't think this disclaimer gets it done. It is circular in the sense that matters. I mean, if they had said, we disclaim all liability that's protected by a federal defense, like that wouldn't pass the straight face test because that's just circular. I think you just answered this just a minute ago, but I've been thinking about this disclaimer here and then also about your arguments that the PFAS here is inseparable or it's forever chemical and it leaches through the environment. Say I agree with you that this disclaimer maybe doesn't work in the way that Maine wants it to. Would there ever be a disclaimer in a case like this that would work? Could you think of one that would? I mean, it's hard for me to sort of give away part of what my client might want to argue, but I would say let me at least tell you what would be a much harder case. If this were a case where if Maine picked one site in the remote corner of the state that was as far as possible for all the military bases as imaginable and said, look, we just want to recover for this one site. That's all that's at issue here. We don't want to do anything else. And then they gave the kind of disclaimer that was at issue in the Rowul case in the Seventh Circuit. Then I might still say there's still a problem if we could allege in that case, and maybe we couldn't if it's remote enough. But if we could allege in that case it's still indivisible and there's still PFAS contamination here from the federal contracting, then it would be removal, I suppose, because there would still be the question of who's right about that, and I think that should be in federal court. But that's a much harder case. And, you know, I obviously don't know what my friend is going to disclaim or not disclaim when he gets up here, but I don't think that kind of disclaimer that was at issue in Rowul works in a case like this where the case is statewide. And that's why I do think it is helpful to start, as this Court instructed, and express scripts with the question, like, but for the disclaimer, is this removable? And, I mean, I think it would be hard to construct a complaint that was more removable because the complaint keeps on talking about statewide injury. It seeks recovery for abatement and investigation costs, and then seven different times it says the injuries to the natural resources in Maine are indivisible. It even has one specific allegation where it says, you know, it also says this stuff migrates, but it has a specific allegation that says that part of the problem is when the PFAS gets into a wastewater treatment plant and part of the process is you sort of, you know, get rid of the water and you have sludge, then that sludge is used on farmers' fields throughout Maine. And so something that starts as a contamination for one specific wastewater treatment facility ends up spreading throughout the state because the wastewater sludge is then used on farmers' fields as a nitrate additive. So the complaint, and obviously it's their complaint, you know, some of that stuff we might dispute, but the complaint is written in terms that really make it kind of very, very hard to separate out the AFFF PFAS, and then they simply have the disclaimer. And, you know, obviously this case does not want for 28 J letters, but you may have seen the last two 28 J letters where as the discovery is ongoing in the state court, new disputes arise as to the extent to which AFFF sort of PFAS has gotten into additional water sources that are plainly at issue in the state court litigation. Is there evidence in that state court litigation that PFAS contamination caused by AFFF and PFAS contamination caused by the non-AFFF sources can be distinguished? If I go back to the complaint, you know, it lists PFAS and then like a million other acronyms for related PFAS. Yeah, so what you might find there is a factual dispute about that question. It is certainly 3M's position that you can't distinguish it particularly once it's, you know, it's basically at the end of the day it's the same chemical compounds. And then once they're in the water, you know, you can try to say based on sort of proximity or where a water source is versus a contamination source, you can, you know, you can speculate as to where it was, where it came from, but you can't like fingerprint it or you can't like sort of look at it and say, oh, well, this has the distinct mark of AFFF PFAS versus non-AFFF PFAS. So we know this one is not related to the government contracting. Now, again, I don't know what my friend will say about that. It may be that we just have a factual dispute about that, but that's exactly the kind of factual dispute that the federal contractor is entitled to have resolved in the federal forum. And just, you know, one last thought here before I sit down is that, you know, if this had just been a single suit, you know, this would all be so much simpler because there would be a debate in federal court about whether the colorable federal defense is actually a valid federal defense. Then there would be a single adjudication about the scope of that federal defense. And then, you know, you're sort of done. Whereas because they bifurcated the cases and they sort of recognize that the presence of AFFF is essentially the marker for federal jurisdiction, like I'm not even sure how this is going to work going forward if we don't prevail in this appeal because there's going to be an ongoing set of disputes about whether a particular source is part of the federal claim or part of the non-federal claim. And all of that makes the disclaimer here quite different from the disclaimer that many courts have confronted in other contexts. And maybe this is part of my answer to your original question about what disclaimers work. I mean, most disclaimers are like real disclaimers. The plaintiff is saying, I'm never going to try to recover for this. Or, you know, I have two state law claims, a failure to warn claim and a design defect claim, and the federal defense only applies to one, and I'm going to disclaim that claim forever. Like those kind of disclaimers are different than this, which is really I'm disclaiming this in this lawsuit, but I'm going to try to recover it in this lawsuit. And I think this is going to create all manner of problems down the road, like issue preclusion and all of the like, and it's just such a better solution to have this one case be removed to federal court. So, counsel, their position is that even if it's a 1% contamination, they're still disclaiming. So they are, in fact, disclaiming any kind of responsibility for anything that's PFAS. So I don't know if they are, if it's just like a 1%, if it's not one morsel, but I still don't think it works here because there's still factual disputes about whether there's any federal PFAS, if you will, in particular sort of water streams. And that's a dispute that really belongs in federal court at bottom because you can say, well, I've just disclaimed that, but the dispute is still at bottom a dispute about the scope of the federal defense. That's why they're disclaiming that. A fact finder is going to have to determine, okay, if you look at the penultimate set of 20HAs, there's this dispute about a particular water supply near the Brunswick Air Force Base, but it's a municipal water supply for Brunswick and Topsham. And we say that there's federal AFFF there. They say, I guess, that there's not. That's a factual dispute. We could say it's a dispute about the scope of the proxy, rather of the disclaimer, but that's just a proxy for a debate about the scope of the federal defense. Mr. Clement, if I might, suppose we agree with you. What is the proper remedy here? And what are the consequences of that remedy as to all matters that were before the state court? I take it you're saying we simply reverse the remand order. Do we then order the district court to take jurisdiction? And what is the effect on the state court proceedings to date? Are they just null and void? So, Judge Lynch, I think the answer would be that we would ask you to essentially reverse and sort of essentially direct the case sort of proceed in federal court. I mean, if you wanted to get into the second issue about the factual disputes about particular water sites, then maybe there would be a remand for that. But we don't actually think that's necessary because of the nature of their complaint. Mr. Clement, before you go on, I take it that the state court has not yet ruled on any of those factual disputes. That's my understanding. I think we're still in discovery there. I think, I mean, you know, I think at some level the proceedings in state court would be null and void. But at another level, I mean, to the extent interrogatories have been exchanged and things like that, there's probably some judgment calls for the district court judge as to how to proceed going forward. Okay. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the appellee please introduce himself on the record to begin? May it please the Court. Matt Power for appellee, the State of Maine. I'm joined at Council table by Assistant Attorney General Mark Bauer. The court should affirm the district court's decision here that the state's disclaimer, in this case, is a valid express disclaimer that precludes federal officer jurisdiction. The state has disclaimed recovery for all sites with commingled AFFF and non-AFFF contamination, regardless of whether or not that AFFF is mil-spec. We are not seeking to have the fact finder in this case allocate as between AFFF and non-AFFF, again, regardless of whether or not it's mil-spec AFFF. The jury will never get there. But how can that be? Our disclaimer is just like the one in the Seventh Circuit by the State of Illinois. If there is a site with commingled contamination, it's at issue in the other lawsuit. It's going to be at issue in the case that's in the multi-district litigation. And it is not going to be at issue here. But their position is that there's commingling everywhere statewide, and that the fact that you would have to have a separate hearing to determine if that's correct means that there's federal officer defense. Right. Well, respectfully, that is not their position. Their position is that there's five military bases, four of which have some commingled contamination that is, quote, nearby those bases. That is what they said. Now, we have said that there's non-AFFF PFAS contamination statewide and that it's ubiquitous. And they say, well, you've got five military bases that you sued us at in another case, that's not at issue here, that have AFFF. And they use the word nearby to describe that contamination a couple of times in their reply brief. It's pages 21 through 23. They're talking about nearby military bases. But their argument today certainly seems to suggest a much broader contamination theory. I mean, they're talking about sludge and fertilizer.  And we have a series of 900 sites. It does not include any site for which there's cross-contamination. In fact, I just want to point out, we have a declaration. Unrebutted fact established in this case that it's possible to do source attribution. The department, excuse me, I believe Judge Lynch is trying to ask a question. You have just stated we are not suing as to any site in which there is cross-contamination. But that is not what your complaint says. Your complaint says if there is any such site, we attempt to disclaim. Whether the disclaimer is sufficient or not is another matter. But surely you concede that some of the sites at issue have at least the potential for cross-contamination. The way we plaid our case, respectfully, is a series of discrete sites. We use the word locations repeatedly throughout our complaint. Locations to describe the area where there's PFAS contamination. Yes, but in discovery you've now described Brunswick and other areas where it seems quite likely there is some form of cross-contamination. We do not list the military bases at all in the complaint at issue here. Those military bases, in fact, are expressly listed in the other case. Excuse me, counsel, you list the Brunswick Municipal Water Supply. Of course you haven't listed the military installations. You have listed areas where they say there is cross-contamination. I would appreciate greater candor from the State of Maine. Well, respectfully, I think that the way we have drafted this complaint is to make clear that any area where there's commingled contamination is not at issue in this case. And we acknowledge that they say there is commingling, but that's why we have the disclaimer. So the disclaimer comes in and sits as an umbrella in case we have what I would describe perhaps as an oops. Like, oops, in discovery did we list a case where they can say, aha, we can show there's AFFF there. And they say now that they have done that and they've found a place like Brunswick where they're – and that's when we say, oh, well, that may have been an oops. Good for you. You found some AFFF. That's why we have the disclaimer. We're going to cross that off the site. And that is a question of causation that is antecedent to the issue of federal officer defense. Counsel, you may have read my Moore decision in which we discussed the amendment to the statute and congressional choice not to use the word causation but to use the word related to. And we made it quite clear in the First Circuit it was not a causal standard. Judge Helpe in the most recent decision also repeated that. Some circuits disagree with us. You rely on those circuits. But that is not First Circuit law. And related to usually has an extremely broad reach when Congress uses the term. Right. And we embrace that decision. And there's two different issues here. This court said in Puerto Rico v. Express Scripps that a disclaimer that requires the state court to determine the nexus between the charge conduct and the federal authority is not a valid means of precluding removal. But here our position is respectfully the state court will never have to do so because the charge conduct issue here is the production and distribution of the PFAS products. Right. The causation issue comes before you get to that issue of whether or not the charge conduct is related to the federal officer defense. That's the mil spec. And for purposes of this appeal we're not disputing that the mil spec creates that causal nexus between the charge conduct and the federal authority. What we are saying is that you never get to that issue because we have a causation issue that is antecedent to the federal defense. You have a related to issue. And the remand order expressly said, oh, the state court can determine that related to issue. And Mr. Clement has suggested that alone means that the removal was wrong because it has to be a federal court under the federal officer defense, which determines that question. A federal court has to determine the relationship between the charge conduct and the federal authority. Right. That's like the Willingham v. Morgan case from the Supreme Court, Jefferson County v. Acker. Here we don't have a dispute about the scope of 3M's federal obligations. There's no dispute about that. If it comes up at all, it will come up in the MDL court. And it's a matter of the mil spec. What we have here is a dispute about the scope of our lawsuit. And we'd refer you to what the Ninth Circuit recently said in the California v. Harrison v. Express Scripps case. In the process of crediting the defendant's theory of the case, a court is not free to disregard or rewrite the allegations the plaintiff has chosen to include in its complaint. And I also want to refer your honors to the oral argument in the New Hampshire case presenting this exact same issue. The court didn't decide it. Is the Ninth Circuit rule consistent with our Puerto Rico case? I believe it's very consistent. In Puerto Rico, this court described disclaimers that are valid, and it referred to a whole series of asbestos decisions in which you have an indivisible injury by a plaintiff. The plaintiff has sued numerous different companies for mesothelioma and has expressly disclaimed any recovery for conduct that occurred on a military base during the time the plaintiff was in military service. And the court said that's an example of a proper disclaimer. And, you know, our case is very much like that, except we have a much more conservative disclaimer. Those cases required allocation. And this court embraced those cases. It embraced the asbestos case. And, in fact, this court ruled on a disclaimer in the Rhode Island One case in which it said that a disclaimer in there actually required the court to engage and the finder of fact to engage in allocation. In the Rhode Island One case, it was about Rhode Island sued energy companies for climate change, for CO2, greenhouse gas emissions. And notice those greenhouse gas emissions mix uniformly and indivisibly in the environment. And yet the court held that the contract between CITCO and the Navy, which was expressly disclaimed by the plaintiff because it was federal conduct, meant that the disclaimer was valid and there was no federal office or jurisdiction. That case is indistinguishable from our case, except that we have a much more modest disclaimer that looks just like the one from the state of Illinois. And the state of – now – yes? To change the subject, do you think you could address the latest 28J letter that 3M filed regarding the Juniper Ridge landfill, which I think is a named site in your complaint in this case? That's right. But as I read that 28J letter, 3M suggests – Right. So, like, it's inevitable in a case with 900 sites that there's going to be an oops. I want to point out that we have a declaration from the State Department of Environmental Protection in this case that is an unrebutted fact that there are hundreds, quote, hundreds, potentially thousands of sites of PFAS contamination in Maine that are unrelated to AFFF. That is an undisputed, unrebutted fact here. And so this is – So what do you mean by there might be an oops somewhere? Is that just a mistake? The Juniper Ridge – look, we received this 28J letter, what, a week or two ago. We have to look into the facts. We have to examine it. Our declaration also says that source attribution is possible. That's at State Addendum Page 3. And that you can do an investigation, and we will do an investigation, figure out if Juniper Ridge has AFFF. And we'll do the same thing we've been doing for the last six years for the state of Vermont. And we'll amend our discovery responses. And we'll take a Juniper Ridge out of the case if we have to. Six sites they've named out of 900, and we can amend our discovery responses to take them out. And the U.S. Supreme Court in Royal Canin just recently embraced this idea that you can – But, I mean, 3M's position will be we have a defense to that site here that we wish to raise, and we can't. And we are the masters of our complaint and can take that complaint out of the case. And, you know, there's really no fair reading of our complaint in which any of these commingled sites are at issue in the case, with the possible exception of Juniper Ridge. But, again, we haven't had an opportunity to submit facts to the district court on this to prepare for an appeal. So we don't have a proper record. And we object to trying to belatedly inject this into the appeal. I'm sorry, Judge Lynch. I interrupted. I beg your pardon. Okay. 3M, in a series of 28-J letters to us, has asserted that there is a plausible commingling of the chemical that they have the federal defense at a number of the sites. You say, oh, we're not going to amend our complaint now and eliminate all of those sites. We need to investigate and determine whether 3M is correct or not. And only after we investigate and we reach a conclusion would we then amend our complaint. Isn't that exactly why there are issues here to be determined and they have to be determined by the federal court? Respectfully, no, because we can remove sites from the case. Even if whether or not they've met their, we're not conceding they've met their plausibility standard. We have a whole section of our brief, as you know, in which we argue that they are speculating.  But before we ever get there, we've got a disclaimer. And the disclaimer says. Suppose they disagree with you. Right. I mean, you do your investigation. Right. You make a determination, yeah, that they've got a good point or they don't have a good point. If they disagree with you, then what? If they disagree with us, then we may remove it from the case as a matter of caution. We will ensure that they will never have to put their federal officer defense at issue in the state court. We have built a bulwark around that because we're disclaiming all AFFF, whether or not it's mil-spec, whether or not it has a federal defense. And this is an issue of causation. And 3M admitted that this was an antecedent issue of causation. In the New Hampshire oral argument, if you listen to the questioning by Judge Rickleman with 3M's lawyer, and they've incorporated that oral argument into their brief here at page 33. And Judge Rickleman jumps in and says, wait a minute. That allocation issue that you're talking about is not an issue. It's an issue of causation. It's not the federal defense. And 3M says, you're right. It's a causation issue. It's a quote. They said you're right. And then they said, well, it tees up the federal officer defense. Well, if it tees up the federal officer defense, we must be right that the causation issue comes first. It's antecedent to the issue of the federal officer defense. And so that is where we stake our claim in this case. We are like Raul. Now, they say Raul is different because there's only one site. But analytically, how many sites matters? Is it one? Is it five? They're asking you to create a circuit split with the Seventh Circuit. And just because there's one site, that is not a basis to dismiss. We can do the same thing that Illinois did in the Seventh Circuit, whether it's one site or five sites or 500 sites. Thank you. Your time is up. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Thank you, Paul Clement, again, for the appellants. Just a few quick points in rebuttal. You know, I'd invite you to read the state's complaint. And I do think Express Scripts is exactly right. You just start with the complaint, put the disclaimer aside for a second. The complaint talks about statewide contamination, ubiquitous contamination, the sludge that gets taken and put on the farmer's field. It also is seeking recovery for fish and wildlife. The fish and wildlife don't stay put. They move from one site to the other. I mean, wildlife presumably includes birds that can move from one site to another. And then, of course, they're also seeking abatement and recovery of investigation costs, all of which are statewide. So the only place this gets at all site-specific is when you get to the disclaimer. And so then they try to disclaim essentially anything that has AFFF. And he admitted today that there are probably a couple of sites that are oops. Well, determining which sites are oops and which sites are not oops is essentially a question about what's the scope of the federal defense. And that should be decided in federal court. And, of course, then there's the related question is, like, what do you even do if there is an oops? You know, they don't actually disclaim liability for that oops. Then they think it somehow migrates to the federal case or something. And all of those problems can be avoided if you simply say that this kind of bifurcation and disclaimer doesn't work at least in this set of cases. And that's, of course, exactly what the Fourth Circuit said in the Maryland case. And with respect to my colleague, the only person asking you to create a circuit split here today is my friend because to decide this case against 3M here, I think we'll create a circuit split with the Fourth Circuit in Maryland. The Raul case was expressly distinguished by the Fourth Circuit in that Maryland case. So you don't have to create a circuit split with the Seventh Circuit. And the California case is, by its own terms, distinguished Maryland as being unique facts. They weren't quite right about that. It's not unique. These are the same set of facts. And then with all due respect to the California decision, I think the California decision also failed to credit the allegations of the removal petition the way that would be required under this circuit's law. So I think if you look at the circuit law out there, the only person asking you to create a circuit split is my friend from Maine. One last thing before I sit down, or maybe two. One, I'm not going to tell the author of Rhode Island 1 what that decision did or not decide. I read that decision as essentially saying the allegations in that complaint were about misrepresentations that had nothing to do with the federal contracts. So that wasn't going to drive the decision. I think it is worth recognizing that the Fourth Circuit had a parallel case, the city of Baltimore case. That didn't stop them from finding that this parallel case in Maryland was removable. So I think the greenhouse case cases are distinguishable. The last thing on this antecedent point, that doesn't move the needle. You could have a purely circular disclaimer that said, we're going to disclaim anything protected by the federal defense, and they could say, oh, that's an antecedent question of causation. It's still the same question. It belongs in federal court. Thank you for your indulgence. Thank you. Thank you, counsel. That concludes argument in this case.